UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABRAHAM ISAIAS ARROYO,<br><br>Petitioner,<br><br>v.<br><br>NDOH,<br><br>Respondent. | No. 2:18-cv-1682-KJM-EFB P<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a California state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On September 23, 2014 and in the Sacramento County Superior Court, a jury found petitioner guilty of first degree residential burglary (Cal. Pen. Code § 459), rape (§ 261, subd. (a)(2)), and robbery (§ 211). The jury also found true an allegation that the rape was committed during the commission of a first-degree burglary with the intent to commit theft (§ 667.61, subd. (e)(2)). Finally, the jury found petitioner not guilty of assault with intent to commit oral copulation, but found him guilty of the lesser included offense of simple assault (§ 240).

Now, petitioner raises three claims on federal habeas review. First, he argues that the trial court "coerced" and "caus[ed] un[n]ecessary pressure on a deadlock[ed] jury" by providing a deadlock-breaking instruction. Second, he argues that insufficient evidence supports his rape conviction. Third, he argues that his trial counsel was constitutionally ineffective for not adequately communicating with him during trial.

1

For the reasons stated below, the court recommends that this petition be denied in its entirety.

## BACKGROUND

A. <u>Prosecution Case</u>

In 2013, Mona Doe lived alone in an apartment on Power Inn Road in Sacramento. An injury to her spine, sustained when she was three years old, rendered her incapable of walking and necessitated use of a wheelchair. Nevertheless, Doe retained some feeling below her waist.

Petitioner lived in the same apartment complex as Doe and she was familiar with him. In the fall of 2013, petitioner knocked on her door and asked if she was single. Doe explained that she was divorced, indicated that she had to go, and closed the door. She felt that petitioner was "hitting on her." On a subsequent day, an object was thrown through Doe's apartment window. She reported the incident to police and went outside to examine the area. Doe saw petitioner there and he expressed concern about the window.

At 1:00 a.m. on December 21, 2013, Doe heard a banging on her door. Without opening the door, Doe demanded to know who it was. A man responded that he was with "maintenance." Doe told the man to go to the window and, when he did so, she recognized him as the petitioner. He told Doe that she needed to sign some papers. She told him to come back in the morning. Petitioner moved back to the door and started banging on it again. Doe took her phone and tried to call her brother for help.

Petitioner crashed through her window. Doe began to cry and scream. Petitioner took her phone, put in his pocket, and told Doe to quiet herself. He told her that he just wanted to be with her. When Doe kept screaming and crying, he struck her in the face several times. She stopped crying because she believed that petitioner was going to kill her. Petitioner exposed his genitals roughly a foot from Doe's face. She told him "No, I can't do that." Doe offered him all the money she had – ten dollars – and her laptop if he would agree to leave. Petitioner declined the offer and reiterated his desire to be with her.

Petitioner began to move Doe, in her wheelchair, toward her bedroom with the intention of having sex with her. She told him not to move her there. He then asked her where would be

2

preferable. Doe responded "I guess here," indicating the hallway. She had "no more fight in [her]" and feared that, if she continued to refuse petitioner's advances, "it would be worse."

Petitioner moved Doe from the wheelchair to the floor. He covered her mouth and nose with his hand. He climbed on top of her and vaginally penetrated her with his penis. Doe's feeling is diminished below the waist, but she testified that she felt pressure as a consequence of this penetration.

At about this time, someone else started pounding on the apartment door. A security guard had been dispatched to perform a welfare check after someone else in the complex reported a possible disturbance or fight. Petitioner stood up and Doe told him to leave via the back door. He did so, and fled by climbing over the apartment's back fence. The security guard entered through the broken window and Doe told him that she had been raped. He called for backup and police arrived shortly thereafter.

Doe was examined the morning after the attack. An examining physician observed bruises on Doe's face, forearm, and back. The physician examined Doe's genitalia and found no injuries. The physician would later explain that this was not necessarily inconsistent with Doe's claim that petitioner raped her, because approximately half of sexual assault patients displayed no medical findings on the genital exam.

A crime scene investigation of the apartment revealed blood drops on the carpet. DNA from the blood samples were tested and matched to petitioner's profile. Petitioner was arrested two days after the assault. DNA samples from his genitalia were inconclusive as to whether Doe's DNA was contained therein.

B. Defense Case

At trial, petitioner testified in his own defense. He stated that, on the day of the assault, he was living with his girlfriend and four-year old son. He drank a substantial amount of alcohol that night – a twelve pack of beer and some hard lemonade. Petitioner claimed not to know why he went to Doe's apartment that night and stated he could not remember knocking on her door.

/////

/////

3

He did claim to know that he had not gone there with the intention of having intercourse with Doe; he stated that he expected only to "conversate" with her. Petitioner also stated that he remembered breaking the apartment window and cutting his leg on the broken glass.

Petitioner admitted striking Doe when she refused his advances. He testified, however, that "[he] felt like it [penetration] didn't happen." During closing arguments, petitioner's trial counsel conceded that defendant was guilty of assault, attempted rape, and robbery. However, counsel urged the jury to acquit him of burglary and rape.

## STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

### I. Applicable Statutory Provisions

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d) constitutes a "constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus." *(Terry) Williams v. Taylor*, 529 U.S. 362, 412 (2000). It does not, however, "imply abandonment or abdication of judicial review," or "by definition preclude relief." *Miller El v. Cockrell*, 537 U.S. 322, 340 (2003). If either prong (d)(1) or (d)(2) is satisfied, the federal court may grant relief based on a de novo finding of constitutional error. *See Frantz v. Hazey*, 533 F.3d 724, 736 (9th Cir. 2008) (en banc).

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. *Harrington v. Richter*, 562 U.S. 86, 99-100 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state law procedural principles to the contrary. *Id.* at 784-785 (citing

4

*Harris v. Reed*, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785.

### A. "Clearly Established Federal Law"

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. *Lockyer v. Andrade*, 538 U.S. 63, 71 72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in issue is clearly established by Supreme Court precedent." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013).

### B. "Contrary To" Or "Unreasonable Application Of" Clearly Established Federal Law

Section 2254(d)(1) applies to state court adjudications based on purely legal rulings and mixed questions of law and fact. *Davis v. Woodford*, 384 F.3d 628, 637 (9th Cir. 2003). The two clauses of § 2254(d)(1) create two distinct exceptions to AEDPA's limitation on relief. *Williams*, 529 U.S. at 404-05 (the "contrary to" and "unreasonable application" clauses of (d)(1) must be given independent effect, and create two categories of cases in which habeas relief remains available).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." *Id.* at 405. This includes use of the wrong legal rule or analytical framework. "The addition, deletion, or alteration of a factor in a test established by the Supreme Court also constitutes a failure to apply controlling Supreme Court law under the 'contrary to' clause of the AEDPA." *Benn v. Lambert*, 283 F.3d 1040, 1051 n.5 (9th Cir. 2002). *See, e.g., Williams*, 529 U.S. at 391, 393 95 (Virginia Supreme Court's ineffective assistance of counsel analysis "contrary to" *Strickland*[1] because it

---

[1] *Strickland v. Washington*, 466 U.S. 668 (1984).

5

added a third prong unauthorized by *Strickland*); *Crittenden v. Ayers*, 624 F.3d 943, 954 (9th Cir. 2010) (California Supreme Court's *Batson*[2] analysis "contrary to" federal law because it set a higher bar for a prima facie case of discrimination than established in *Batson* itself); *Frantz*, 533 F.3d at 734 35 (Arizona court's application of harmless error rule to *Faretta*[3] violation was contrary to U.S. Supreme Court holding that such error is structural). A state court also acts contrary to clearly established federal law when it reaches a different result from a Supreme Court case despite materially indistinguishable facts. *Williams*, 529 U.S. at 406, 412 13; *Ramdass v. Angelone*, 530 U.S. 156, 165 66 (2000) (plurality op'n).

A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407 08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 21 (2003). This does not mean, however, that the § (d)(1) exception is limited to applications of federal law that "reasonable jurists would all agree is unreasonable." *Williams*, 529 U.S. at 409 (rejecting Fourth Circuit's overly restrictive interpretation of "unreasonable application" clause). State court decisions can be objectively unreasonable when they interpret Supreme Court precedent too restrictively, when they fail to give appropriate consideration and weight to the full body of available evidence, and when they proceed on the basis of factual error. *See, e.g., Williams*, 529 U.S. at 397-98; *Wiggins*, 539 U.S. at 526 28 & 534; *Rompilla v. Beard*, 545 U.S. 374, 388 909 (2005); *Porter v. McCollum*, 558 U.S. 30, 42 (2009).

The "unreasonable application" clause permits habeas relief based on the application of a governing principle to a set of facts different from those of the case in which the principle was announced. *Lockyer*, 538 U.S. at 76. AEDPA does not require a nearly identical fact pattern before a legal rule must be applied. *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). Even a

---

[2] *Batson v. Kentucky*, 476 U.S. 79 (1986).

[3] *Faretta v. California*, 422 U.S. 806 (1975).

6

general standard may be applied in an unreasonable manner. *Id.* In such cases, AEDPA deference does not apply to the federal court's adjudication of the claim. *Id.* at 948.

Review under § 2254(d) is limited to the record that was before the state court. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. *Id.* In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." *Id.* at 1399.

Where the state court's adjudication is set forth in a reasoned opinion, § 2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." *Frantz*, 533 F.3d at 738 (emphasis in original). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In *Richter*, *supra*, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. *Richter*, 131 S. Ct. at 786.

C. "Unreasonable Determination Of The Facts"

Relief is also available under AEDPA where the state court predicated its adjudication of a claim on an unreasonable factual determination. Section 2254(d)(2). The statute explicitly limits this inquiry to the evidence that was before the state court.

Even factual determinations that are generally accorded heightened deference, such as credibility findings, are subject to scrutiny for objective reasonableness under § 2254(d)(2). For example, in *Miller El v. Dretke*, 545 U.S. 231 (2005), the Supreme Court ordered habeas relief where the Texas court had based its denial of a *Batson* claim on a factual finding that the prosecutor's asserted race neutral reasons for striking African American jurors were true. *Miller El*, 545 U.S. at 240.

An unreasonable determination of facts exists where, among other circumstances, the state court made its findings according to a flawed process – for example, under an incorrect legal standard, or where necessary findings were not made at all, or where the state court failed to consider and weigh relevant evidence that was properly presented to it. *See Taylor v. Maddox*, 366 F.3d 992, 999 1001 (9th Cir.), *cert. denied*, 543 U.S. 1038 (2004). Moreover, if "a state

court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in a 'unreasonable determination' of the facts" within the meaning of § 2254(d)(2). *Id.* at 1001; *accord Nunes v. Mueller*, 350 F.3d 1045, 1055 (9th Cir. 2003) (state court's factual findings must be deemed unreasonable under section 2254(d)(2) because "state court . . . refused Nunes an evidentiary hearing" and findings consequently "were made without . . . a hearing"), *cert. denied*, 543 U.S. 1038 (2004); *Killian v. Poole*, 282 F.3d 1204, 1208 (9th Cir. 2002) ("state courts could not have made a proper determination" of facts because state courts "refused Killian an evidentiary hearing on the matter"), *cert. denied*, 537 U.S. 1179 (2003).

A state court factual conclusion can also be substantively unreasonable where it is not fairly supported by the evidence presented in the state proceeding. *See, e.g., Wiggins*, 539 U.S. at 528 (state court's "clear factual error" regarding contents of social service records constitutes unreasonable determination of fact); *Green v. LaMarque*, 532 F.3d 1028 (9th Cir. 2008) (state court's finding that the prosecutor's strike was not racially motivated was unreasonable in light of the record before that court); *Bradley v. Duncan*, 315 F.3d 1091, 1096 98 (9th Cir. 2002) (state court unreasonably found that evidence of police entrapment was insufficient to require an entrapment instruction), *cert. denied*, 540 U.S. 963 (2003).

II. The Relationship Of § 2254(d) To Final Merits Adjudication

To prevail in federal habeas proceedings, a petitioner must establish the applicability of one of the § 2254(d) exceptions and also must also affirmatively establish the constitutional invalidity of his custody under pre AEDPA standards. *Frantz v. Hazey*, 533 F.3d 724 (9th Cir. 2008) (en banc). There is no single prescribed order in which these two inquiries must be conducted. *Id.* at 736 37. The AEDPA does not require the federal habeas court to adopt any one methodology. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

In many cases, § 2254(d) analysis and direct merits evaluation will substantially overlap. Accordingly, "[a] holding on habeas review that a state court error meets the ' 2254(d) standard will often simultaneously constitute a holding that the [substantive standard for habeas relief] is satisfied as well, so no second inquiry will be necessary." *Frantz*, 533 F.3d at 736. In such cases,

relief may be granted without further proceedings. *See, e.g., Goldyn v. Hayes*, 444 F.3d 1062, 1070 71 (9th Cir. 2006) (finding § 2254(d)(1) unreasonableness in the state court's conclusion that the state had proved all elements of the crime, and granting petition); *Lewis v. Lewis*, 321 F.3d 824, 835 (9th Cir. 2003) (finding § 2254(d)(1) unreasonableness in the state court's failure to conduct a constitutionally sufficient inquiry into a defendant's jury selection challenge, and granting petition); *Williams v. Ryan*, 623 F.3d 1258 (9th Cir. 2010) (finding § 2254(d)(1) unreasonableness in the state court's refusal to consider drug addiction as a mitigating factor at capital sentencing, and granting penalty phase relief).

In other cases, a petitioner's entitlement to relief will turn on legal or factual questions beyond the scope of the § 2254(d) analysis. In such cases, the substantive claim(s) must be separately evaluated under a de novo standard. *Frantz*, 533 F.3d at 737. If the facts are in dispute or the existence of constitutional error depends on facts outside the existing record, an evidentiary hearing may be necessary. *Id.* at 745; *see also Earp*, 431 F.3d 1158 (remanding for evidentiary hearing after finding § 2254(d) satisfied).

## DISCUSSION

### I. Supplemental Jury Instruction

At trial, the jury began deliberating on September 16, 2014. On September 18, 2014, the jury asked the trial court "[w]hat is the procedure if we are at an impasse on several issues?" The trial court ultimately gave the jury an instruction designed to assist the jury in breaking the impasse. Petitioner challenged this instruction on direct appeal and the appellate court upheld the instruction after finding that it was not coercive. Petitioner argues this decision was unreasonable.

#### A. Last Reasoned State Decision

The California Court of Appeal upheld the trial court's instruction:

> The jury began deliberating on September 16, 2014, following four days of trial testimony. On September 18, 2014, the jury sent the trial court the following question, "What is the procedure if we are at an impasse on several issues?" The trial court summoned the jury, and the foreperson advised the court that the impasse involved factual, as opposed to legal, issues. The foreperson also informed the court that the jury had reached a verdict on one of the four charges. The jury

9

exited the courtroom, and the trial court advised counsel of its intent to give the jury the so-called "firecracker" instruction upheld by this court in *People v. Moore* (2002) 96 Cal.App.4th 1105 (*Moore*). Defense counsel did not object.

When the jury returned, the trial court instructed it in pertinent part as follows: "Your goal as jurors should be to reach a fair and impartial verdict if you're able to do so based solely on the evidence which is presented and without regard for the consequences of your verdict regardless of how long it takes to do so. [¶] . . . [¶] . . . [Y]ou have absolute discretion to conduct your deliberations in any way in which you deem appropriate. [¶] May I suggest that since you've not been able to arrive at a verdict on one or more counts using the methods that you have chosen, that you consider changing the methods you've been using, at least temporarily, and try new methods. [¶] For example, you may wish to consider having different jurors lead the discussion for a period of time. Or *you may wish to experiment with reverse role playing by [having] those on one side of any issue present and argue the other side's position and vice versa.* This may enable you to better understand the others['] positions. [¶] By suggesting that you should consider changes in your methods of deliberation, I want to stress that I am not dictating or instructing as to how to conduct your deliberations. I merely suggest that you might find it productive to do whatever is necessary to ensure that each juror has a full and fair opportunity to express his or her views and consider and understand the views of the other jurors." (Italics added.)

The jury resumed deliberations, and the following afternoon the foreperson advised the trial court that while the jury had not reached a verdict on any additional counts, the foreperson believed that further deliberations would be fruitful. One and one-half days later, the jury reached a verdict on all remaining counts.

Whether to declare a hung jury or order further deliberations rests in the trial court's sound discretion. (§ 1140; *People v. Bell* (2007) 40 Cal.4th 582, 616 (*Bell*), disapproved on other grounds in *People v. Sanchez* (2016) 63 Cal.4th 665, 686, fn. 13.) " 'Although the court must take care to exercise its power without coercing the jury into abdicating its independent judgment in favor of considerations of compromise and expediency [citation], the court may direct further deliberations upon its reasonable conclusion that such direction would be perceived " 'as a means of enabling the jurors to enhance their understanding of the case rather than as mere pressure to reach a verdict on the basis of matters already discussed and considered.' " ' [Citation.]" (*Bell*, at p. 616.)

As defendant acknowledges, the instruction given to jurors in this case is virtually identical to an instruction we approved in Moore. As we explained in that case: "In *Allen v. United States* (1896) 164 U.S. 492, 501-502, the Supreme Court approved a charge (the *Allen* charge) which encouraged the minority jurors to reexamine their views in light of the views expressed by the majority, noting that a jury should consider that the case must at some time be decided. In *People v. Gainer* (1977) 19 Cal.3d 835, however, our state high court

10

> disapproved of *Allen* in two respects. The *Gainer* court found 'the discriminatory admonition directed to minority jurors to rethink their position in light of the majority's views' was improper, inasmuch as, by counseling minority jurors to consider the majority view, whatever it might be, the instruction encouraged jurors to abandon a focus on the evidence as the basis of their verdict. (*Gainer*, at pp. 845, 848.)" (*Moore*, *supra*, 96 Cal.App.4th at pp. 1120-1121.)
>
> Defendant urges this court to follow the reasoning of Justice McAdams's concurrence in *People v. Whaley* (2007) 152 Cal.App.4th 968, 985, which found the " 'reverse role playing' " suggestion troubling and the overall instruction to create an expectation of a verdict. (*Ibid.*) However, even Justice McAdams concluded that his "concerns and criticisms do not rise to a level that compels reversal under the circumstances of this case." (*Id.* at p. 986.) Here, on facts less troubling than the 11-1 split known to the trial judge in Whaley, we decline to find the instruction coercive. [FN 3]
>
> [FN 3] As defendant acknowledges, the record in this case does not reflect the numerical split when the jury announced it was at an impasse, and there is no indication that the judge was aware of the numerical split. Indeed, he specifically instructed the jury not to provide that information.

Lodg. Doc. 8 at 16-18. The issue was raised again before the California Supreme Court (Lodg. Doc. 9 at 32-33. The California Supreme Court issued a summary denial. Lodg. Doc. 10.

### B. Clearly Established Federal Law

Generally, a challenge to the correctness of state court jury instructions does not state a federal constitutional claim. *Engle v. Isaac*, 456 U.S. 107, 119 (1982). A challenged instruction cannot be "merely . . . undesirable, erroneous, or even 'universally condemned,'" - it must violate a due process right guaranteed by the fourteenth amendment to warrant federal habeas relief. *Cupp v. Naughten*, 414 U.S. 141, 146 (1973).

In *Lowenfield v. Phelps*, the Supreme Court held that "[t]he use of a supplemental charge has long been sanctioned." 484 U.S. 231, 237 (1988). A trial court's instruction that a jury continue deliberations violates a defendant's due process rights only if the jury was coerced into relinquishing their view in favor of unanimity. *Id.* at 237-41. Whether the trial court's actions and statements were coercive is considered under the totality of the circumstances. *Id.* at 237.

/////

/////

11

C. <u>Analysis</u>

As an initial matter, this court is not in a position to evaluate whether the trial court's Instruction was correct under California law. *See Bains v. Cambra*, 204 F.3d 964, 971 (9th Cir. 2000) ("[A] federal court is bound by the state court's interpretation of state law."). Thus, the only question before this court is whether the trial court's instruction violated petitioner's due process rights. The U.S. Court of Appeals for the Ninth Circuit has identified three factors which a court should consider when evaluating the constitutional propriety of a supplemental jury instruction: "(1) the form of the instruction, (2) the time the jury deliberated after receiving the charge in relation to the total time of deliberation, and (3) any other indicia of coerciveness." *United States v. Berger*, 473 F.3d 1080, 1090 (9th Cir. 2007)(citing *United States v. Steele*, 298 F.3d 906, 911 (9th Cir. 2002)). Having reviewed those factors (and the totality of the circumstances), the court concludes that court of appeals decision to uphold the trial court's supplemental instruction was not a violation of clearly established federal law.

First, the form of the instruction was not coercive. It recognized that the jury had "absolute discretion" in conducting its deliberations. 2RT at 859. And, after suggesting possible changes to the jury's methods of deliberation, the trial court took pains to note that:

> By suggesting that you should consider changes in your methods of deliberation, I want to stress that I am not dictating or instructing as to how to conduct your deliberations. I merely suggest that you might find it productive to do whatever is necessary to ensure that each juror has a full and fair opportunity to express his or her views and consider and understand the views of the other jurors.

*Id.* at 859-60.

Second, and as the court of appeal noted, even after the jury was given the supplemental instruction it did not return a verdict on the counts at issue until one and a half days later. Courts have found shorter deliberative times to be non-indicative of coercion. *See United States v. Bonam*, 772 F.2d 1449, 1450-51 (9th Cir. 1985) ("A jury verdict reached immediately after an *Allen* charge can be an indication of coercion. In this case, the jury deliberated for an hour and one-half after the instruction was given. This was not an immediate post-charge guilty verdict nor
/////

12

was the verdict rendered in such a short period of time as to raise a suspicion of coercion."); *see also United States v. Lorenzo*, 43 F.3d 1303, 1307 & n.3 (9th Cir. 1995) (finding a deliberation time of five and a half hours after supplemental charge to be non-indicative of coercion).

Third, petitioner has not pointed to any other indicia of coercion.

Finally, as respondent notes in the answer to this petition, the Ninth Circuit has previously upheld a California court's use of a similar instruction. *See Parker v. Small*, 665 F.3d 1143, 1145-48 (9th Cir. 2011). There, the Ninth Circuit determined that "[a]s long as the California Court of Appeal reviewed all the facts, and considered the supplemental charge in its context and under all the circumstances in holding that it was not coercive, then, in the absence of Supreme Court authority to the contrary, this Court must give deference to the California Court of Appeal's judgment." *Id.* at 1148. Here, as in *Parker*, the decision of the state court of appeals indicates that it reviewed the facts, considered the supplemental instruction in the total context of the case, and determined that it was not coercive.

This claim fails.

## II. Sufficiency of the Evidence

In his second claim, petitioner argues that the "DNA evidence and inconsistent statements from the victim [do] not support the rape charge." ECF No. 1 at 5.

### A. Last Reasoned State Decision

Petitioner challenged the sufficiency of the evidence support his rape conviction on direct appeal and the court of appeal rejected it, reasoning:

> Defendant first contends "[t]here was insufficient evidence of sexual penetration to sustain [his] conviction of rape . . . ." He is mistaken.
>
> In determining whether there is sufficient evidence, we must determine whether the evidence, and reasonable inferences to be drawn from the evidence, provides substantial evidence of each element of the charged crime. (*People v. Crittenden* (1994) 9 Cal.4th 83, 139 fn. 13.) " 'In reviewing a challenge to the sufficiency of evidence, the reviewing court must determine from the entire record whether a reasonable trier of fact could have found that the prosecution sustained its burden of proof beyond a reasonable doubt. In making this determination, the reviewing court must consider the evidence in a light most favorable to the judgment and presume the existence of every fact the trier could reasonably deduce from the evidence in support of the judgment. The test is whether substantial

evidence supports the [conclusion of the trier of fact], not whether the evidence proves guilt beyond a reasonable doubt.' [Citations.]" (*Id.* at p. 139, quoting *People v. Mincey* (1992) 2 Cal. 4th 408, 432.)

Section 261 defines rape as an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under various situations, including intercourse accomplished against a person's will by force, violence, duress, menace, or fear of immediate bodily injury. (§261, subd. (a)(2).) The requisite act of sexual intercourse must include an act of penetration. "Any sexual penetration, however slight, is sufficient to complete the crime" of rape. (§ 263.) "Penetration" means "sexual penetration and not vaginal penetration. Penetration of the external genital organs is sufficient to constitute sexual penetration and to complete the crime of rape even if the rapist does not thereafter succeed in penetrating into the vagina." (*People v. Karsai* (1982) 131 Cal.App.3d 224, 232, 182 Cal. Rptr. 406, disapproved on other grounds in *People v. Jones* (1988) 46 Cal.3d 585, 600, fn. 8.)

In the instant case, Mona testified that she was "positive" defendant's penis went inside her vagina. She explained that despite her spinal cord injury, sexually she has feeling, "[n]ot a lot, but enough." She has the ability to "feel or have a sensation to know when a penis is inside of [her] vagina." She knew defendant's penis entered her vagina "[f]rom the pressure."

Defendant acknowledges that Mona testified that his penis entered her vagina, but argues that based on the record, "a reviewing court would be required to speculate that [Mona] had sufficient sensation to know whether penetration had occurred . . . ." In support of his assertion, defendant points to a statement Mona made to the sexual assault investigator that she did not remember everything "because there was so much going on."

Mona was interviewed by a sexual assault investigator to determine "how much - if anything - that [she] could feel" when defendant penetrated her vagina. She explained, "I have sensation and I can feel the pressure. [¶] . . . [¶] . . . And um, I can feel when they enter, and I can feel penetration." She went on to state that "at that time, I had . . . my hand on my mouth so that he wouldn't kiss me," "[a]nd my other hand trying to keep my nightgown down, so he couldn't touch me. [¶] . . . [¶] . . . And I had his hand over . . . my mouth and my nose — so I couldn't breathe. [¶] . . . [¶] . . . And so there was a lot going on at that time. And him saying, 'Is — is it in? Is it in?' And — and I — there was banging on the door from the security guard asking. And so when he was inside there — I don't remember everything because there was so much going on." Mona's statement that she did not "remember everything because there was so much going on" is ambiguous at best. Defendant apparently interprets her statement to mean that she does not remember whether his penis was inside of her; however, the statement could just as easily be interpreted to mean that she does not remember everything that occurred while defendant was inside her apartment or everything that was happening while his penis was inside of her. Indeed, the investigator later sought clarification, posing the following question:

14

> "I know that there was a lot going on. But are you confident that at least at some point his penis actually entered your vagina?" Mona responded, "Yes I am — I'm very confident that his penis entered my vagina." At best, Mona's statement that she did not "remember everything because there was so much going on" created a conflict in the evidence, which we must resolve in favor of the judgment. (*People v. Johnson* (1980) 26 Cal.3d 557, 576, 162 Cal. Rptr. 431, 606 P.2d 738 (*Johnson*).)
>
> Defendant also points to Dr. Rosas's testimony that Mona would have been unable to feel pain during the vaginal examination because of her spinal cord injury in support of his assertion that there is insufficient evidence of penetration. When asked if Mona ever complained of pain in her vaginal area during the examination, Dr. Rosas responded that Mona could not complain of pain in that area because she has no feeling as a result of her spinal cord injury. Again, Dr. Rosas's testimony, at best, created conflict in the evidence, which we must resolve in favor of the judgment. (*Johnson*, *supra*, 26 Cal.3d at p. 576.)
>
> Mona consistently stated that defendant's penis entered her vagina, and testified in detail about how, despite her spinal cord injury, she was able to feel when his penis entered her vagina. The jury was entitled to credit this testimony. There was ample evidence to support a finding that there was sexual penetration in this case.

Lodg. Doc. 8 at 6-8. The issue was raised again before the California Supreme Court. Lodg. Doc. 9 at 11-15. The California Supreme Court issued a summary denial. Lodg. Doc. 10.

### B. Clearly Established Federal Law

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[T]he dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318). Put another way, "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). Sufficiency of the evidence claims in federal habeas proceedings

/////

must be measured with reference to substantive elements of the criminal offense as defined by state law. *Jackson*, 443 U.S. at 324 n.16.

In conducting federal habeas review of a claim of insufficient evidence, "all evidence must be considered in the light most favorable to the prosecution." *Ngo v. Giurbino*, 651 F.3d 1112, 1115 (9th Cir. 2011). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial," and it requires only that they draw "'reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (per curiam ) (citation omitted). "'Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction.'" *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) (citation omitted).

If the record supports conflicting inferences, the reviewing court "must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (per curiam) (quoting *Jackson*, 443 U.S. at 326). In evaluating the evidence presented at trial, this court may not weigh conflicting evidence or consider witness credibility. *Wingfield v. Massie*, 122 F.3d 1329, 1332 (10th Cir. 1997). Instead, as noted above, the Court must view the evidence in the "light most favorable to the prosecution," *Jackson*, 443 U.S. at 319.

Juries have broad discretion in deciding what inferences to draw from the evidence presented at trial. This court may not "impinge[ ] on the jury's role as factfinder," or engage in "fine-grained factual parsing." *Coleman*, 566 U.S. at 655. As the Ninth Circuit has explained, "[t]he relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict." *United States v. Mares*, 940 F.2d 455, 458 (9th Cir. 1991). Under *Jackson*, the Court need not find that the conclusion of guilt was compelled, only that it rationally could have been reached. *Drayden v. White*, 232 F.3d 704, 709-10 (9th Cir. 2000).

"A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). Because this case is governed by the Anti-

Terrorism and Effective Death Penalty Act, this court owes a "double dose of deference" to the decision of the state court. *Long v. Johnson*, 736 F.3d 891, 896 (9th Cir. 2013) (quoting *Boyer v. Belleque*, 659 F.3d 957, 960 (9th Cir. 2011)). *See also Coleman*, 566 U.S. at 651 ("*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference."); *Kyzar v. Ryan*, 780 F.3d 940, 943 (9th Cir. 2015) (same).

### C. Analysis

The court of appeal's rejection of this claim was reasonable. Doe testified at trial as to petitioner's penetration of her vagina. 1RT at 137, 185, 188-89. Doe also reported the penetration to a physician (Dr. Rosas) when she was examined after the incident. *Id.* at 231. This evidence alone was sufficient for a jury to rationally reach a guilty verdict. Petitioner's contention that the victim offered inconsistent statements is unavailing insofar as this goes only to Doe's credibility as a witness – an issue that was the jury's alone to weigh. *See*, *e.g.*, *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004) ("A jury's credibility determinations are therefore entitled to near-total deference under *Jackson*.").

And, with respect to DNA evidence, petitioner has failed to point to any evidentiary item or items which significantly undermine confidence in the verdict. Indeed, his petition states only that the "DNA findings [were] none" – it does not specify what DNA evidence he is referring to. To the extent he is referring to the inconclusive results of a DNA sample taken from his penis, that result is not automatically exculpatory. It obviously follows that the prosecution's case against petitioner would have been stronger if the tests had been positive. Nevertheless, the jury was aware of the inconclusiveness of those results and had the opportunity to factor it into their verdict. 2RT at 454-56. In doing so, the jury was entitled to credit the testimony of the victim. Thus, as noted above, there was sufficient evidence from which the jurors could have reasonably concluded that petitioner was guilty of rape.

### III. Ineffective Assistance of Counsel

Petitioner's final claim is that "[d]uring my time in county fighting my case their (sic) wasn't much communication with my attorney and I." ECF No. 1 at 5. He argues that "[l]ack of communication doesn't mean it [presumably referring to representation] was ineffective but it can

mean the assistance of counsel wasn't there for the client." *Id.* Nevertheless, he classifies this claim as one for ineffective assistance.

Respondent points out that this claim was not exhausted in state court. Petitioner did raise an ineffective assistance claim related to his counsel's failure to argue that a physician – Dr. Rosas – was unqualified to opine that medical findings were consistent with the victim being sexually assaulted. Lodg. Doc. 5 at 41-45. He did not, however, at any point raise a claim related to a lack of communication between himself and his trial counsel. Regardless, this claim is plainly without merit and the court finds it more expedient to resolve it on that basis. *See* 28 U.S.C. § 2254(b)(2) (an application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State); *Gatlin v. Madding*, 189 F.3d 882, 889 (9th Cir. 1999) (district court may exercise discretion to consider merits of unexhausted habeas claim).

### A. Clearly Established Federal Law

The clearly established federal law governing ineffective assistance of counsel claims is that set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a *Strickland* claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." *Id.* at 687. Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." *Id.* at 687-88 (internal quotation marks omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687).

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

/////

B. <u>Analysis</u>

Petitioner's claim premised on lack of communication is too vague to succeed. It is well established that "conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994). Petitioner has failed to provide any factual context for this claim. He has also failed to describe how the purported lack of communication with his counsel actually prejudiced his defense. His petition asserts that "[g]oing through the record someone more knowledgeable could pinpoint it out for me." ECF No. 1 at 5. This may be true, but it is petitioner's burden to articulate his own claims. It is not the responsibility of either the respondent or the court to sift through the record and, armed only with petitioner's vague assertions, sculpt claims which he has failed to raise.

<u>CONCLUSION</u>

For all the reasons explained above, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: July 24, 2019.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE